ARTHUR KOST, d.b.a. KOST AMBULANCE SERVICE,
v. GORDON C. PETERSON.

193 N. W. 2d 291.

December 17, 1971—No. 42841.

*Gordon C. Peterson,* pro se, for appellant.

*Gislason, Alsop, Dosland & Hunter* and *James H. Malecki,* for respondent.

Heard before Murphy, Peterson, Kelly, and Hachey, JJ.

MURPHY, JUSTICE.

Appeal from an order of the district court denying defendant's motion for judgment notwithstanding the verdict or a new trial. The issue presented for review relates to the question of whether an agent, acting for a disclosed principal, has incurred personal liability to the third person because of alleged fraudulent acts.

It appears from the record that defendant, Gordon C. Peterson, an agent acting for Federal Auto Systems (hereinafter referred to as F.A.S.), a Chicago-based corporation, called upon plaintiff, Arthur Kost, who owned and operated a garage, ambulance service, and wrecker service in Mankato, Minnesota. Peterson presented to Kost a proposal under which Kost could obtain a franchise or brokerage rights to engage in the leasing of new automobiles under a plan or program sponsored by F.A.S. The complaint alleges that Kost was induced to pay Peterson the sum of $487.50 by his fraudulent representations (a) that plaintiff could purchase and sell new automobiles without a state license; (b) that purchases of new automobiles for resale could be made at less than dealer's cost; (c) that a field organizer for F.A.S. would call and explain the details of the plan and assist in instituting the plan; (d) that a training course would be provided; and (e) that plaintiff's draft in the amount of $487.50 covering an initial deposit fee would not be negotiated until his application had been processed and approved by the F.A.S. home office.

The undisputed facts indicate that plaintiff did apply for an appointment to represent the F.A.S. leasing program and that he accompanied his application with a check for $487.50. On receiving the application and check, defendant gave plaintiff a receipt which stated:

"Art Kost

218 - So. 2nd St.

"APPLICANT

"RECEIPT IS HEREBY ACKNOWLEDGED OF YOUR CHECK IN THE AMOUNT OF FOUR HUNDRED EIGHTY-SEVEN DOLLARS AND FIFTY

CENTS ($487.50), GIVEN TO OUR REPRESENTATIVE GORDON C. PETERSON. THIS CHECK WILL BE CERTIFIED AND THEN FORWARDED WITH YOUR BROKERAGE APPLICATION TO OUR OFFICE AT CHICAGO, ILLINOIS. YOU WILL BE NOTIFIED WITH UTMOST DISPATCH AS TO YOUR ACCEPTANCE OR REJECTION AS BROKER. IF ACCEPTED, CONTRACT WILL BE FORWARDED TO YOU. IF NOT, YOUR CHECK WILL BE RETURNED UNCASHED. SIGNATURE OF OUR REPRESENTATIVE IS AUTHORIZED BELOW.

"[SIGNED]  GORDON C. PETERSON
FEDERAL AUTO SYSTEMS
AUTHORIZED SIGNATURE
1830 HILLSBORO AVE. SO.
AREA CODE 612-545-6979
MPLS."

The next morning defendant took the check to plaintiff's bank for certification. He was told by the bank that, as a matter of policy, they would not certify the check unless requested personally by the maker, but instead would give him a money order made out with the name of the same payee. Accordingly, defendant endorsed and cashed the check and, in exchange therefor, was given a money order payable to F.A.S. Leasing, Inc., with the name of plaintiff as remitter, the same as it appeared on the original. Defendant then forwarded plaintiff's application, together with the money order, to his principal at its Chicago address. It appears that the check was duly accepted and processed through regular banking channels. Shortly thereafter, plaintiff sought to stop payment on the check but found that it had already been cashed. Defendant had no further contact with plaintiff until served with process in this action. In his memorandum, the trial court observed: "Defendant received none of the money and there is no question that F.A.S. received the proceeds."

Although there were oblique attempts by plaintiff to establish evidence of fraud with relation to the substance of the contract, it is not disputed that the court correctly determined that there was insufficient evidence to raise an issue as to fraudulent par-

ticipation by defendant. In cross-examination of defendant, plaintiff's attorney suggested:

"You were aware, were you not, that F.A.S. was being investigated by the Attorney General?"

An objection to this question was properly sustained by the trial court.

The trial court, in his memorandum, stated:

"* * * Plaintiff's counsel in his argument referred to F.A.S. as a 'fly by night outfit.' This may have been going a bit too far but this Court does not feel it was prejudicial."

The essential issue came down to the question of whether or not defendant acted fraudulently in converting plaintiff's check into a bank money order for transmission to his principal, and that was the issue submitted to the jury. The jury returned a verdict for plaintiff in the amount of $487.50.

■ The principle of law to be applied to the facts in this case is expressed in numerous authorities. Where an agent, acting for a disclosed principal, enters into a contract with third persons for and on account of his principal and in his name, the contract is that of the principal and does not give rise to any contractual obligation running to the agent. An action to recover money paid to the agent upon the ground that the contract was subsequently breached by the principal should be brought against the principal and not against the agent, since the alleged breach of contract does not retrospectively affect the lawfulness of the payment and its receipt by the agent at the time it was made. 1A Dunnell, Dig. (3 ed.) § 217; Kelley v. Olson, 272 Minn. 134, 136 N. W. 2d 621 (1965); MacKenzie v. Ryan, 230 Minn. 378, 41 N. W. 2d 878 (1950); Firestone Tire & Rubber Co. v. Robinson, 225 Minn. 493, 31 N. W. 2d 18 (1948).

An agent is not liable to a third person who has voluntarily paid money for use of his principal where, before notice that the principal is not entitled to the money, the agent has turned it over to him. City of Kiel v. Frank Shoe Mfg. Co. 245 Wis. 292,

14 N. W. 2d 164 (1944); Annotation, 82 A. L. R. 307. The rule is well stated in 3 Am. Jur. 2d, Agency, § 304, as follows:

"As a general rule, money paid an agent for the benefit of a known principal, to be returned to the payor upon nonperformance of certain conditions, cannot, when the payor becomes entitled to its return, be recovered from the agent, since the question whether the payor is entitled to the money is one that does not concern the agent, but is between the payor and the principal."

The foregoing rule does not, of course, apply if the agent is guilty of tortious conduct in connection with false representations or deception which induces the contract, as in Sawyer v. Tildahl, 275 Minn. 457, 148 N. W. 2d 131 (1967), where there was evidence that the agent knowingly assisted in fraudulent representations that induced the injured person to enter into the contract.

The components of actionable fraud which are material to the case before us are (1) that the representations must be false; (2) that they must have to do with a past or present fact; (3) that the fact must be material; (4) that the third person's acts must be in reliance upon the representations; and (5) that the alleged misrepresentations or statements must be the proximate cause of the loss. 8A Dunnell, Dig. (3 ed.) § 3818; Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. 2d 305 (1955); Hanson v. Ford Motor Co. 278 F. 2d 586 (8 Cir. 1960). Under the facts before us, it is not claimed that the agent misrepresented or concealed the extent of his authority so as to make him responsible for the nonperformance of the contract by his disclosed principal. Kelley v. Olson, *supra*. The record contains no evidence of a misrepresentation of a past or present fact with reference to the substance of the contract nor of a misrepresentation which would induce plaintiff to sign the check and application. It is apparent that the manner in which the money was transmitted to the principal was collateral to the contract and did not relate

to a subject material to the contract itself. 37 Am. Jur. 2d, Fraud and Deceit, § 180.

■ The burden of plaintiff's complaint is that because of defendant's conduct in transmitting the money to the principal, plaintiff was denied the opportunity to stop payment on the check. This would seem to imply that the check was given to defendant with the understanding that the delivery of it was qualified or conditional. It seems to us that plaintiff overlooks the fact that, when he delivered the check to defendant, it was with the understanding that it would be "certified and then forwarded" with his application to the principal's office. Instead of certifying the check, defendant exchanged it for a bank money order. If the check had been certified by the bank, the amount would have been withdrawn from the payor's control and become the obligation of the bank. Under the circumstances, we do not understand, nor has plaintiff explained, how the manner in which the remittance was transmitted was of material consequence. In either event, the effect of the transaction was acceptance of the check by the bank for payment.

It is true that the receipt recites that if the application was not accepted, the check would be returned uncashed. The record does not touch upon the facts relating to rescission or breach of the contract. Whether the contract was accepted or rejected is not material to the issues here because such matters concerned only plaintiff and F.A.S. Defendant, the agent, was not a party to the contract, and since he acted for an identified principal within his apparent authority, he cannot be liable for the nonperformance of the contract by either party. 3 C. J. S., Agency, § 215.

Defendant's motion for judgment notwithstanding the verdict should have been granted.

Reversed.